[Civ. No. 9198.  First Appellate District, Division Two.—July 20, 1934.]

GEORGE F. OVIEDO, M. D., Respondent, v. LONDON GUARANTY & ACCIDENT COMPANY, LTD., Appellant.

Bronson, Bronson & Slaven and Harold R. McKinnon for Appellant.

Leslie C. Gillen and Bernard Nugent for Respondent.

SCHMIDT, J., *pro tem.*—Some time in 1925, one Louis Beronio in the due course of his employment received a serious injury to his back and consulted the defendant Dr. T. J. Nolan, who testified, "I examined Louis Beronio and made a report to the London Guaranty & Accident Company concerning his condition. When Mr. Beronio first consulted me about April 15, 1925, he was complaining of pain in the back. He consulted me at that time, not at the instance or instigation of any insurance company. His case was then pending, or about to pend, before the Industrial Accident Commission. On May 11, 1925, I wrote to the Industrial Accident Commission giving them a detailed report of his condition. Following this, the patient was returned to me for treatment by the London Guaranty & Accident Company. The patient was under treatment from June 23, 1925, up to July 7, 1926. This bill was taken care of by the London Guaranty & Accident Company." In his report the doctor gave detailed findings of the condition of the vertebra of Beronio stating that, "Beronio is totally disabled for any form of heavy, laborious work. . . . The patient should discard his braces . . . and receive intensive physio-therapy treatment. If this does not relieve the pain over the fourth lumbar vertebra he should then be operated upon. That was the conclusion of my examination on May 11, 1925. . . . I made no examination of Beronio's kidneys and urine. He complained of kidney and bladder symptoms, and it was for that reason that he was referred to Dr. Oviedo. (Respondent herein.) I specialize only in bones. Dr. Oviedo specializes in kidneys. . . . It is necessary at times to treat a man, if one particularly specializes, to cure him up of some other ailment." "Q. And was that the case in this instance, doctor? A. Yes." Then witness continuing: "I have done other medical or bone work for this defendant London Guaranty & Accident Company. In one of those cases I found it necessary to send the patient to some other specialist. I don't know whether the London Guaranty & Accident Company paid the other doctor in that case, . . . When I sent Beronio to Dr. Oviedo, I did not instruct Dr. Oviedo as to where his report should be made. . . . I received a communication in writing dated June 23, 1925, from the London Guaranty & Accident Company signed by Mr. McAllister regarding Beronio which read as

follows: 'This is to advise that we will be responsible for physio-therapy treatments to be rendered by you to Mr. Beronio in accordance with your report to the Industrial Accident Commission, dated May 11, 1925.' '' The witness further testified, "That did not suit me because it did not specify in there that I was to receive pay for any treatment that I might render him or any cash I should apply on him, or for any of my office visits, so that I called Mr. McAllister up and told him that the order was not satisfactory, and I said, 'I have inserted in lead pencil a clause that I wish you would put in your next order.' So he just took the original and wrote on the bottom: 'Dr. Nolan: Give Mr. Beronio any treatment that you deem necessary at our expense.' And he signed it here. . . . The way I came to send Beronio to Dr. Oviedo was on account of his complaint of kidney and bladder symptoms. . . . When Beronio mentioned Dr. Oviedo's name I told him that he had better consult him concerning his symptoms that he was complaining of. I never told Dr. Oviedo that the London Guaranty & Accident Company would pay his bill and be responsible for his bill. I do not believe that I had any conversation regarding who would be responsible for the bill. I have a faint recollection of telling him that he should get an order. I couldn't swear to that, however. . . . I did not give Beronio any treatment myself for his kidneys. All I treated him for was his back condition and I was paid for that by the London Guaranty & Accident Company. I do not remember any conversation with Beronio concerning financial conditions or pay for Dr. Oviedo. . . . I stated . . . that it was necessary at times with a condition such as Beronio's to clear up another injury or illness before I could give my treatment. I felt that Mr. Beronio had poison in his system; . . . interfering with him making a normal recovery. In addition to that, it was producing in his general system an arthritis which would interfere with any recovery, and would interfere with my treatment of him for the ailment for which I was treating him, that is, I could have treated him, but I would not have gotten the same result."

The respondent, Dr. Oviedo, testified that he first met Beronio on May 19, 1925. That Beronio was sent to him by Dr. Nolan, that he examined Beronio and found his bladder and urine infected "so that I told him that the best thing

for him to do was to go out to St. Mary's Hospital for a complete examination of his kidneys, and I notified Dr. Nolan that I was sending him out there; and then after I made this examination of the kidneys I notified Dr. Nolan verbally of the conditions which I found there. Dr. Nolan told me to go ahead and do whatever I could for Beronio to help clear up this kidney condition. He said that my efforts were necessary before he would be able to effect a complete cure in his specialty." The doctor then testified in detail as to his visits to and treatments given Beronio. "The total of all these items is $1,507. In May, 1926, I made an application to the Industrial Accident Commission for compensation for my professional services rendered to ·Beronio. My bill at that time was $960 . . . " The doctor explained that the additional amount over the $960 to the total of $1507 was due to treatment given subsequent to May, 1926, and up to a second hearing before the commission; that there was a discussion before the Industrial Accident Commission as to whether Beronio's kidney condition was secondary to the accident. "It was my testimony before the commission that his kidney condition was secondary to his accident." The record further showed that at this first hearing before the commission a judgment was given in favor of Beronio, that he then was re-examined by another physician and that the commission finally found that the kidney ailment was not caused by the accident and disallowed the claim of Dr.· Oviedo. The doctor testified that he had treated Beronio for approximately two years and eight months and when Beronio first came to him he had received $50 as a deposit, that at that time he did not know that there was any insurance company involved in the case, that the first time he discovered that there was an insurance company involved, was when he sent Beronio to the hospital a couple of days after first seeing Beronio. "I did not then get in touch with the London Guaranty & Accident Company, because my reports at that time were not complete. I never got in touch with the London Guaranty & Accident Company until the matter came up for hearing before the Industrial Accident Commission. I never went down to see them or talk to them and I never talked to anybody connected with them." " . . . I sent Beronio every month a copy of my bill, . . . what I had been doing for

him. He wanted that for his own personal record . . . whether my bills that were presented to the Industrial Accident Commission were made out to Beronio, my answer is 'No'; Mr. McAllister at that time . . . asked me for my charges, and I turned over a bill to Mr. McAllister. The bill was for services rendered to Beronio. I just turned it over to Mr. McAllister. He said he would take care of the bill if everything went along.''

The foregoing is substantially all of the evidence introduced by respondent and at the close of his evidence appellant made a motion for a nonsuit on the ground that it had not been shown that either the appellant or Dr. Nolan had become bound to respondent for his doctor's bills under any legal contract. The motion was denied. Whereupon appellant offered in evidence the receipt dated July 10, 1925, given by Dr. Oviedo to Beronio evidently on a printed billhead, the only part necessary to this case being, ''July (10) on acc't 50.00 G. F. Oviedo M. D.'' Beronio in testifying for appellant stated that he had told Dr. Nolan that he had paid Dr. Oviedo $50 and Dr. Nolan about $30 or $40. He had other bills from the hospital that he thought ought to be paid, that he asked Dr. Nolan if it would be all right for him to go to the insurance company and present these bills so that they could be paid, that Dr. Nolan told him, ''No use taking them down there. They won't pay them anyway''; that he told Dr. Oviedo about it and that Dr. Oviedo told him to save the bills, that he showed these bills to Dr. Nolan about July 10th. Dr. Oviedo stated that Beronio showed him bills and that he had told him to keep the bills in his own possession ''and if the case ever came to a settlement, to present the bills, and see if they would be paid''.

Upon this evidence findings and judgment went for respondent against appellant for the amount claimed, namely, $1507. Judgment went for the defendant Nolan.

■ (1) Appellant claims that there was not any clear relationship between it and respondent whereby it became liable to respondent for the services respondent rendered to Beronio. ''The rule in this state is well established that the contract of an agent who deals in his own name without disclosing that of his principal is the contract of his principal, and the principal is liable thereon.'' (*Central Savings*

*Bank* v. *Coulter,* 72 Cal. App. 78, at page 87 [236 Pac. 956].) ██ Under the facts disclosed by the record in this case there cannot be any doubt that it was the intent of the London Guaranty Company to have Dr. Nolan act for it, the insurance company, to see to it that Beronio received "any treatment you deem necessary" and that the "any treatment" under the circumstances meant not only such treatment as Dr. Nolan personally could give but also such additional treatment as in the opinion of Dr. Nolan was advisable; that it was the opinion of Dr. Nolan that in order that a quicker and better cure could be had for the bone injury to the back, for which Dr. Nolan was treating Beronio, that Beronio should be treated for the kidney trouble; that in accordance with this opinion, Dr. Nolan sent Beronio to Dr. Oviedo for treatment; and that Dr. Nolan as well as Mr. McAllister for appellant had in mind the services to be rendered for the kidney trouble when there was added to the written authority given to Dr. Nolan the following: "any treatment you deem necessary at our expense".

Without question appellant acquiesced in the treatment that was given Beronio by Dr. Oviedo and used the services of Dr. Oviedo to obtain, if possible, a quicker and more complete recovery of Beronio's back injury in order that appellant should pay to Beronio the smallest amount of compensation possible.

██ (2) Appellant further contends that the finding of the Industrial Accident Commission upon its second hearing that the kidney ailment of Beronio was not due to the injury received in his employment and the consequent disallowance by the commission of the bill of Dr. Oviedo precludes Dr. Oviedo from thereafter maintaining this action and cites in support thereof *Pacific Employers Ins. Co.* v. *French,* 212 Cal. 139 [298 Pac. 23]. That decision merely determines that the Industrial Accident Commission cannot allow a doctor bill and have the same a lien against the award given the injured employee when the Industrial Accident Commission finds that the services rendered by the doctor were in connection with an ailment which the Industrial Accident Commission finds is not secondary to the injury. Inasmuch as the commission in the Beronio case found that the kidney trouble was not due to the accident,

the commission could not allow the bill of Dr. Oviedo for his services rendered. Had the commission found that the kidney trouble was due to the injury then the bill for services for Dr. Oviedo would have been a proper allowance for the commission to make and in such event the allowance would have become a lien upon the award to Beronio made by the commission. In other words, the lien for services rendered is wholly incidental to the principal award and without any award for the ailment treated there can be no lien. The fact, therefore, that Dr. Oviedo presented to the commission his claim for services rendered to Beronio is immaterial. The finding of the commission cannot be treated as a conclusion either that the services were not rendered by Oviedo or that there was not a contract between the appellant and Dr. Oviedo. Had the commission made such a finding under the circumstances it would have been beyond its jurisdiction; it would have been a nullity and void.

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 18, 1934, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 13, 1934.

Preston, J., voted for a hearing